UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

NOORA D.,                              )
                                       )
        Plaintiff                      )
                                       )
v.                                     )    No. 2:18-cv-00144-NT
                                       )
NANCY A. BERRYHILL,                    )
Acting Commissioner of Social Security,)
                                       )
        Defendant                      )

### REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ"), whose findings were adopted by the Appeals Council on review, supportably deemed the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on several bases, including that the ALJ erred in relying on the testimony of a vocational expert ("VE") without clarifying the impact of the plaintiff's inability to speak or understand English on her ability to perform the representative jobs at issue. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 10, 18-19. I agree and, accordingly, recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith. I need not, and do not, reach the plaintiff's remaining points of error.

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had the severe impairments of diminished vision in her right eye, an affective disorder/major depressive disorder, and an anxiety-related disorder/post-traumatic stress disorder, Finding 1, Record at 91; that she had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following nonexertional limitations: she could occasionally climb ladders, scaffolds, or ropes, could not drive commercial vehicles, could perform tasks requiring no more than occasional far and near acuity with the right eye and no more than occasional depth perception and field of vision with the right eye, could not work at unprotected heights or around dangerous moving equipment, needed to avoid tasks involving a variety of instructions or tasks, but could understand and carry out simple one- or two-step instructions and detailed but uninvolved oral instructions involving a few concrete variables in or from standardized situations, and could not work in direct contact with the public but could work with supervisors and coworkers, Finding 4, *id.* at 93; that, considering her age (26 years old, defined as a younger individual, on the date her application was filed, December 15, 2014), education (limited, "is not able to communicate in English, and considered in the same way as an individual who is illiterate in English (20 C.F.R. [§] 416.964)"), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id.* at 97; and that she, therefore, had not been disabled from the date of her application, December 15, 2014, through the date of the decision, January 17, 2017, Finding 10, *id.* at 98-99. By notice dated November 30, 2017, the Appeals Council granted review of the ALJ's decision, *id.* at 170-74, following which, by decision dated February 7, 2018, it "adopt[ed] all of the [ALJ]'s findings with respect to the [plaintiff]'s severe

impairments, her [RFC] and her ability to perform other work existing in significant numbers in the national economy." *Id.* at 7-8. The decision of the Appeals Council is the final determination of the commissioner. 20 C.F.R. § 416.1481.

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).[2]

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The ALJ determined that the plaintiff, an Iraqi immigrant, was unable to communicate in English. Record at 96; Finding 7, *id.* at 97. While illiteracy or an inability to communicate in English is not *per se* disabling, *see, e.g., Omar v. Astrue*, Civil No. 08-270-P-S, 2009 WL 961230, at *4 (D. Me. Apr. 7, 2009) (rec. dec., *aff'd* May 1, 2009), it is relevant to the determination of

---

[2] The "substantial evidence" standard of review applies to the final determination of the commissioner regardless of whether that determination is the decision of the ALJ or that of the Appeals Council following review of an ALJ's decision. *See, e.g., Diaz v. Chater*, No. 98-1425, 1998 WL 1085686, at *1 (1st Cir. Dec. 30, 1998) (ruling that "[s]ubstantial evidence supported the Appeals Council's determination that the appellant did not show that she had a disabling impairment"); *Michael H. v. Comm'r of Soc. Sec*., 2:17-cv-0447-JAW, 2019 WL 653798, at *5 (D. Me. Feb. 15, 2019) (applying "substantial evidence" standard of review to decision of Appeals Council).

disability as a subset of education, one of three vocational factors (age, education, and work experience) that, along with a claimant's RFC, drive the Step 5 determination of whether a claimant can work, *see* 20 C.F.R. §§ 416.960(c)(1) ("We will look at your ability to adjust to other work by considering your [RFC] and the vocational factors of age, education, and work experience, as appropriate in your case."), 416.964(b)(5) ("Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do.").

"Ordinarily, the Commissioner will meet the step 5 burden, or not, by relying on the testimony of a [VE] in response to a hypothetical question whether a person with the claimant's RFC, age, education, and work experience would be able to perform other work existing in the national economy." *Richardson v. Soc. Sec. Admin. Comm'r*, No. 1:10-cv-00313-JAW, 2011 WL 3273140, at *11 (D. Me. July 29, 2011) (rec. dec., *aff'd* Aug. 18, 2011) (citation and internal quotation marks omitted). The ALJ did so here. *See* Record at 97-98.

"Because literacy, or education level, is relevant only to [the Step 5] inquiry[,] . . . it follows that the Commissioner bears the burden of establishing this factor." *Silveira v. Apfel*, 204 F.3d 1257, 1261 n.14 (9th Cir. 2000). An ALJ, therefore, must explain the impact of a claimant's illiteracy or inability to communicate in English on her ability to work. *See, e.g.*, *Yacoub v. Colvin*, Case No. 1:14-cv-00884-SKO, 2016 WL 541407, at *14 (E.D. Cal. Feb. 11, 2016).

As detailed below, although the ALJ found the plaintiff unable to communicate in English, *see* Finding 7, Record at 97, she did not convey that finding to the VE, *see id*. at 32-34. Later, when the plaintiff's attorney attempted to question the VE on that point, the ALJ interrupted their colloquy, indicating that the need for such testimony was obviated by regulatory guidance in the so-called "Grid," the Medical-Vocational Guidelines, Appendix 2 to Subpart P, 20 C.F.R. § 404. *See id*. at 34-36. In affirming the ALJ's findings on review, the Appeals Council agreed, citing the Grid rules to which the ALJ had alluded at hearing. *See id*. at 7.

At hearing, the ALJ asked the VE if an individual fitting the following description could perform any work:

> Let's assume that we have an individual with no work history and assume that there are no exertional limitations, but that the individual should occasionally climb ladders, scaffolds, or ropes, should not drive commercial vehicles, could perform task[s] that require no more than occasional far acuity with the right eye, occasional depth perception, and occasional field of vision with the right eye.
>
> But no restrictions of the use of the left eye. No work at unprotected heights or around dangerous moving equipment. The individual must avoid tasks involving a variety of instructions or tasks but is able to understand to carry out detailed, but uninvolved oral instructions involving a few concrete variables in or from standardized situations, cannot work in direct contact with the public, but can work with supervisors and co-workers.

*Id.* at 32.

The VE testified that such a hypothetical individual could perform the jobs of dishwasher, Dictionary of Occupational Titles (U.S. Dep't of Labor 4th ed., rev. 1991) ("DOT") § 318.687-010), cleaner, DOT § 323.687-014, and packaging line attendant, DOT § 920.587-018. *See id*. at 32-33. Each of those jobs is described in the DOT as having a General Educational Development ("GED") language level of 1, entailing the following abilities:

> READING: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.

5

WRITING: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.

SPEAKING: Speak simple sentences, using normal word order, and present and past tenses.

DOT §§ 318.687-010, 323.687-014, 920.587-018; Appendix C, § III, to DOT.

When the ALJ invited the plaintiff's counsel, Sherri A. Stone, Esq., to question the VE, *see* Record at 34, 89, the following exchange took place:

[ATTY]: I'd like to add to the first hypothetical that the Claimant doesn't read, speak, or understand English. Does that affect the jobs?

ALJ: You can ask the question but please understand that reading, speaking, and understanding English are not impairments. Those are vocational factors.

ATTY: That's why I'm asking the vocational expert.

ALJ: But that's what I'm saying is they're not related to impairments.

ATTY: But they're a fact of the situation.

ALJ: But you can't point back to an impairment that creates those. Okay? Just letting you know.

ATTY: Yes.

[ATTY to VE]: Would there be any work?

[VE]: Yes, there could be an[d] often are other people, in this case Arabic[,] in a job setting that could help with any directions that would be needed.

[ATTY]: Would that be an accommodation?

[VE]: Yes, it would be.

[ALJ]: Would it be an accommodation based on an impairment?

[VE]: No.

[ALJ]: And is it something that employers generally do for non-speaking and non-English speaking employees?

>[VE]: I'm struggling between generally and often.
>
>[ALJ]: And that's because we already have that factored into our considerations when we look at individuals under the age of 50. Between 45 and 50 we consider the inability to speak English and the inability to read and write English has a greater impact than when you're under age 45 because you can demonstrate a job when you're under the age 45. You could say "go over there, pick that up, move it over there," without having to speak or understand English.
>
>[VE]: Yes.
>
>[ALJ]: Is that part of your struggle?
>
>[VE]: Yes, it is.
>
>ALJ: So it is for those factors[,] Ms. Stone[,] all of those vocational factors they are already built into my consideration when I'm looking at the [M]edical-[V]ocational [G]uidelines under the regulations just to point that out to you. Your client is under the age of 50. She's under the age of 45 and so the Commissioner has already taken that into consideration, the inability to speak English, or the inability to read and write the English language. They have already been considered.

*Id*. at 34-36.

In her Step 5 analysis, the ALJ made no mention of the plaintiff's inability to communicate in English or the VE's testimony on that point. *See id*. at 97-98. In granting review of the ALJ's decision, the Appeals Council acknowledged that the plaintiff's "representative argued that the [ALJ] did not properly address the [VE]'s testimony that [the plaintiff's] inability to communicate in English would require a work accommodation." *Id*. at 172. However, the Appeals Council ultimately "adopt[ed] all of the [ALJ]'s findings with respect to the [plaintiff]'s severe impairments, her [RFC] and her ability to perform other work existing in significant numbers in the national economy[,]" observing, in relevant part:

>We note that the inability to communicate in English is a vocational issue evaluated at step 5 of the sequential evaluation process. Here, the evidence supports the determination that there is work existing in significant numbers in the national economy that the [plaintiff] could perform. While the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than

7

> with data or people) and in these work functions at the unskilled level, literacy or
> ability to communicate in English has the least significance (Appendix 2 to Subpart
> P of Part 404, Sections 201.00(i) and 202.00(g)).

*Id.* at 7.

The plaintiff asserts that the commissioner failed to carry her Step 5 burden because she did not adequately consider the impact of her inability to communicate in English in concluding that she could perform the representative jobs of dishwasher, cleaner, and packaging line attendant. *See* Statement of Errors at 10, 18-19.[3] The commissioner rejoins that the ALJ, whose findings the Appeals Council adopted, properly relied on the VE's testimony, which addressed the plaintiff's inability to communicate in English, and, in any event, even if the plaintiff had been illiterate and limited to sedentary work, the Grid would have directed a finding that she was not disabled. *See* Opposition at 8. The plaintiff has the better argument.

The commissioner first contends that the VE factored the plaintiff's inability to communicate in English into her analysis because she "attended the hearing and heard testimony from Plaintiff, through an interpreter, that she had not learned to read or write any English[.]" *Id.* (citation omitted). Yet, the job of a VE is to respond to hypothetical questions posed at hearing, not to take into account personal observations of claimants. *See* Record at 32; *Saez-Ortiz v. Comm'r of Soc. Sec.*, 1:17-cv-06286-NLH, 2019 WL 324922, at *8 (D.N.J. Jan. 25, 2019) (rejecting argument that "the VE considered Plaintiff's illiteracy because she saw the interpreter at the hearing"; noting, "The presence of an interpreter at a hearing does not automatically suggest the level of a claimant's English literacy and her overall education level.").

---

[3] This point, which the plaintiff's counsel emphasized at oral argument, was not presented as a standalone point of error in his client's brief. *See generally* Statement of Errors. However, it was sufficiently raised to be cognizable. *See id.* at 10, 18-19; Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 18) at 7-8, 18-19.

8

Next, the commissioner asserts that "the VE testified that the three representative jobs she identified still existed, even considering Plaintiff's inability to read and communicate in English." Opposition at 18 (citation omitted). While it is true that the VE initially responded in the affirmative to the plaintiff's counsel's question about whether there would be jobs if the inability to communicate in English were added to the hypothetical, she testified that this would require the accommodation of the provision of translation services. *See* Record at 35. She gave no testimony concerning the extent, if any, to which the need for that accommodation would have eroded the number of available dishwasher, cleaner, and packaging line attendant jobs, *see id.*, and it is not the job of the court to make assumptions to fill that evidentiary gap, *see, e.g., Abdurahman v. Comm'r of Soc. Sec.*, No. 1:11-cv-401, 2012 WL 2863461, at *8 (W.D. Mich. June 15, 2012) (rec. dec., *aff'd* July 11, 2012) ("Plaintiff's inability to communicate in English is a legitimate consideration, which could reduce the number of jobs identified by the VE at Step five of the sequential process.").

Finally, when pressed at oral argument as to the significance of the VE's testimony that the plaintiff would require a special work accommodation, counsel for the commissioner contended that there was evidence that the plaintiff had sufficient English skills to perform unskilled work without such an accommodation, such as her use of public transportation, and that the definition of unskilled work suggests that it can be learned through visual demonstration.

However, these are impermissible *post hoc* rationalizations. *See, e.g., Day v. Astrue,* No. 1:12-cv-141-DBH, 2012 WL 6913439, at *10 (D. Me. Dec. 30, 2012) (rec. dec., *aff'd* Jan. 18, 2013) ("Pursuant to the rule of *SEC v. Chenery Corp.,* 332 U.S. 194 (1947), a reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of a rationale actually articulated by the agency decision-maker. An exception to

the *Chenery* rule exists when a remand will amount to no more than an empty exercise because, for example, application of the correct legal standard could lead to only one conclusion.") (citations and internal punctuation omitted).

In any event, neither point is persuasive. As the commissioner acknowledged in her brief, *see* Opposition at 7, it is undisputed that the plaintiff cannot communicate in English. And, while unskilled work "can be learned on the job in a short period of time" with "little specific vocational preparation and judgment[,]" 20 C.F.R. § 416.968(a), it does not necessarily follow that the demands of such jobs can be visually demonstrated.

Nor, in these circumstances, does the Grid supply substantial evidence that, despite the plaintiff's inability to communicate in English, she could perform the three jobs on which the ALJ and the Appeals Council relied at Step 5.

The commissioner argues that, even if the plaintiff were illiterate and limited to sedentary work, which she is not, the Grid "would still preclude a finding of disability" and "would not disturb the ALJ's reliance on the VE's testimony." Opposition at 8 (citing *Ireland v. Berryhill*, No. 1:16-cv-00376-JDL, 2017 WL 2730023, at *11 (D. Me. June 25, 2017) (rec. dec., *aff'd* Sept. 29, 2017), *appeal docketed*, No. 17-2176 (1st Cir. Dec. 7, 2017); *Bowen v. Colvin*, No. 1:14-cv-451-JHR, 2015 WL 5693049, at *6 (D. Me. Sept. 28, 2015)). To the extent that the commissioner on appeal, the Appeals Council on review, and/or the ALJ at hearing mean to suggest that the Grid rules either trump, or substitute for, the VE's testimony, I conclude otherwise.

The Grid rules cited by the Appeals Council provide that, as to both sedentary and light categories of work:

> While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and

> in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance.

Grid §§ 201.00(i), 202.00(g). Accordingly, "the functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18-44 even if they are illiterate or unable to communicate in English." *Id*. § 201.00(i); *see also id*. § 202.00(g) (same with respect to individuals age 18-49 with "[t]he capability for light work, which includes the ability to do sedentary work").

However, the Grid, a collection of tables used to direct findings of disability or nondisability depending on a claimant's maximum exertional capacity for work (sedentary, light, medium, heavy, or very heavy), age, education, and work experience, does not factor in nonexertional limitations such as diminutions in a claimant's mental, vision, hearing, speech, balancing, and fingering abilities. *See id.* § 200.00(a); Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2018), at 155.

Hence, the Grid generally cannot permissibly be used as a vehicle to meet the commissioner's Step 5 burden – VE testimony ordinarily must be sought instead – if a claimant's nonexertional impairments significantly affect his or her ability "to perform the full range of jobs" at the appropriate exertional level. *Ortiz v. Sec'y of Health & Human Servs.,* 890 F.2d 520, 524 (1st Cir. 1989) (citation and internal quotation marks omitted). Indeed, the Grid itself makes clear that, while Grid rules may be considered, they "do not direct factual conclusions of disabled or not disabled" when, as here, a claimant has "solely nonexertional types of impairments." Grid § 200.00(e)(1); Finding 2, Record at 91.

*Ireland* and *Bowen* are distinguishable. In *Ireland*, the ALJ included the claimant's disability-related reading limitations in her RFC determination and relayed them to the VE present at hearing. *See Ireland*, 2017 WL 2730023, at *10-11. And, in *Bowen*, the ALJ supportably

11

omitted alleged disability-related reading/writing limitations from the claimant's RFC. *See Bowen*, 2015 WL 5693049, at *6. While, in both *Ireland* and *Bowen*, the court agreed with the commissioner that, even had both claimants been illiterate, Grid § 201.00(i) would have directed a finding of nondisability, *see Ireland*, 2017 WL 2730023, at *11; *Bowen*, 2015 WL 5693049, at *6, it had no occasion in either case to consider the extent to which the commissioner may rely on the Grid to override, or compensate for gaps in, VE testimony. *Compare, e.g.*, *Saez-Ortiz*, 2019 WL 324922, at *7-8 (rejecting commissioner's argument that ALJ's error in failing to apprise VE of claimant's lack of English-language skills was rendered harmless by Grid § 201.00(i), which instructs that the inability to communicate in English has the least significance for sedentary, unskilled work); *Yacoub*, 2016 WL 541407, at *15 (same with respect to harmless-error argument predicated on Grid § 202.00(g), which provides that illiteracy has the least impact on unskilled work).

In sum, because the Appeals Council, in its decision adopting the findings of the ALJ, failed to adequately address the undisputed fact of the plaintiff's inability to communicate in English, its Step 5 finding that she was capable of performing jobs existing in significant numbers in the national economy is unsupported by substantial evidence, warranting remand.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum,*

*within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 19th day of May, 2019.

<u>/s/ John H. Rich III</u>
John H. Rich III
United States Magistrate Judge
